UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                Case No:   6:14-cv-1534-Orl-22TBS

JASON P. STINSON,

    Defendant.

## ORDER

The district judge has referred Defendant's Emergency Motion for Stay of Summary Judgment Proceedings Pending the Court's Ruling on Defendant's Motion to Compel Plaintiff's Production of Declarant Ricky Poole for Deposition, Motion to Abate Time for Filing Reply, Motion to Extend Page Limit of Reply to Twenty, or, Alternatively, Motion to Strike Declaration of Ricky Poole (Doc. 96) to me for disposition.   The Court and the parties are familiar with the background of the case:

> This case involves Stinson's alleged operation of a fraudulent tax preparation business.   Stinson's involvement in tax preparation began in 2010 as a manager for LBS Tax Services Stores ("LBS Stores"), and Stinson later became a franchisee of the LBS Stores.   (Stinson Dep., June 26, 2015, (Doc. No. 55-2) 13:4-13:9; 16:20-17:21).   Stinson owned the franchises through his LLC (Jason Stinson LLC).   (Nation Tax Services Dep. (Doc. No. 55-4) at 13:23-15:16).   In total, Stinson was a franchisee of twelve LBS Stores located in four states.   (Doc. No. 55-3).   In each of Stinson's LBS Stores, a manager was responsible for overseeing the tax return preparers.   (*Id.* at pp. 6-7).   From 2010 to 2012, LBS Stores trained Stinson and his managers.   (*Id.* 55-3 at p. 3).   Subsequently, in 2013, after hearing negativity about LBS Stores, Stinson separated himself from LBS by changing the name of Jason Stinson LLC to Nation Tax Services and began operating his franchises under that name.   (Doc. No. 53-3 at pp. 6-7).   Stinson emphasizes that his business primarily targets and serves

> "underprivileged, undereducated poor people." (Doc. No. 57 at p. 17).

(Doc. 69, at 1-2).

The Government sought a preliminary injunction to prevent Stinson from fraudulently preparing any more tax returns (Doc. 55). Stinson responded to the motion, and the Court held a January 27, 2016 hearing on the issue (Docs. 56-57, 60). After due consideration, the Court granted the motion and entered the injunction (Doc. 69). In its Order the Court wrote:

> The Court finds that consideration of the equitable factors weighs in favor of a preliminary injunction. The Government has presented enough evidence to show a pattern of false tax returns sufficient to prove it is likely to succeed on the merits. (*See* Doc. No. 55). Those false tax returns submitted to the Court were prepared by at least twelve of Stinson's tax return preparers employed in four different states. Notably, the falsely reported numbers are not merely oversight, or a computational error, because the errors are repeated and the amounts are significant. The Court finds it implausible that this is due to plain human error.
>
> The Court is most troubled that Stinson's conduct has continued even after the commencement of this lawsuit in 2014. The Government has provided over ten examples of false tax returns prepared in 2015 for the 2014 tax year. (*Id.* at pp. 5-6, 9). Thus, even in 2015, despite being on notice, Stinson continued to prepare tax returns in the same manner that caused the Government to initiate this lawsuit by falsely claiming unreimbursed employee expenses, charitable contributions, and business expenses for non-existent businesses. (*See, e.g.*, *id.*, Ex. 11, Ex. 12, Ex. 17, Ex. 18, Ex. 30, Ex. 31). Stinson's hired consultant, Hermen Cruz, testified that, in 2014, he informed Stinson employees that they cannot claim commuter miles as unreimbursed employment expenses. (Hermen Cruz Dep., (Doc. No. 55-8) 51:3-53:10). Yet, Stinson continued to do so.
>
> Stinson argues that the Government's methodology is flawed because it is not random. (Doc. No. 57 at pp. 11-12). Stinson contends that the Government's non-random sample represents only those tax returns that the Government flagged as potentially incorrect and cannot be used to make

> inferences about the whole population of tax returns prepared by Stinson.  (*Id*.)   Yet, Stinson has not produced a single accurate tax return nor has Stinson presented any evidence that shows that the Government's sample is merely an error rather than intentional.   In contrast, the Court is gravely concerned about the vestiges of fraud present in the Government's evidence that shows a common pattern of Stinson improperly preparing tax returns in similar ways for a period spanning multiple years and in multiple states.   Not even a lawsuit was sufficient to prevent Stinson from continuing to falsify tax returns in the same manner in 2015.
>
> At the hearing, Stinson argued that the Government's depositions of Stinson's customers are untrue and unreliable.   Stinson reasoned that the customers are motivated to lie because they do not want to admit to a felony nor to providing false numbers to a tax return preparer.   However, Stinson later argued that his customers would not receive an EITC or file a proper tax return if not for the services he provides them.   If Stinson's customers are knowledgeable enough to know exactly which numbers to falsify and which responses to give to their tax return preparer to receive a higher tax return, it defies logic for them to pay Stinson to prepare their tax return.   Despite that there exists a potential bias, the Court finds no persuasive reason to discount the sworn testimony of over twenty customers.   In any event, the same argument could be made about the reliability of the testimony of Stinson's tax return preparers.   Therefore, due to the egregious nature of Stinson's conduct, and the numerous examples of false tax returns, the Court finds that the Government is likely to succeed on the merits.

(Id., at 4-5).

Stinson has appealed the preliminary junction (Doc. 70), and requested a stay of the injunction pending the outcome of the appeal (Doc. 71), which the Court denied (Doc. 73).

On February 12, 2016, Stinson filed a motion for the imposition of sanctions against the Government and a motion for summary judgment (Docs. 76-77).   Appended to each motion was an emergency motion for oral argument (Docs. 78 and 79).   The district judge referred the motions for oral argument to me and I denied them (Doc. 80).

The Case Management and Scheduling Order governing the case set a July 1, 2015 deadline for the filing of dispositive motions (Doc. 21 at 1).   Stinson's motion for summary judgment was filed on February 12, 2016 (Doc. 77).   The Government asked the Court to strike Stinson's summary judgment motion as untimely (Doc. 82), which the Court declined to do (Doc. 92).   The Government's now filed response to Stinson's summary judgment motion includes the two page affidavit of Ricky Poole (Doc. 93-1).   Poole is a commissioned agent of the Internal Revenue Service who was assigned to investigate Stinson (Id., ¶¶ 2-3).   Poole's duties included compiling and reviewing IRS examination files, sometimes referred to as "audit files," for customers who had their tax returns prepared at Nation Tax Services tax preparation stores (Id., ¶ 5).   Stinson has already deposed Poole (Doc. 96 at 4).   In his affidavit Poole states:

> 6.   As of March 31, 2016, the IRS has completed examinations of 241 tax returns for tax years 2011, 2012, and 2013, for 154 customers whose tax returns were prepared at Nation Tax Services tax return preparation stores.
>
> 7.   Of these 241 examined returns, 234 required adjustments to the amount of tax reported.   Of the 234 that required adjustments, 230 resulted in a tax deficiency.   The total tax deficiency for these tax returns was $1,107,222, for an average tax deficiency per return (including the seven with no adjustments and the four that did not result in a tax deficiency) of $4,594.28.
>
> 8.   Of the 154 customers whose returns were examined, seven of the customers had returns that identified Jason Stinson as the preparer.   All seven had tax deficiencies.

(Doc. 93-1, ¶¶ 6-8).

The Government has been producing the audit reports to Stinson on a rolling basis (Doc. 96 at 4).   Stinson has not received 26 of those audit reports (Id., ¶ 3).   His reply to the Government's response in opposition to his motion for summary judgment is currently

due on April 14, 2016 (Id., ¶ 2).  On April 7, 2016, Stinson filed a motion to compel the Government to produce Poole for a second deposition; to permit Stinson to file a 20 page reply to the Government's response to his motion for summary judgment; or alternatively, that the Court strike Poole's affidavit and footnote 14 from the Government's response (the "Discovery Motion") (Doc. 95).  The Government's response to the Discovery Motion is not due until April 22, 2016 (Doc. 96, ¶ 6).  Stinson seeks an emergency stay of any action by the Court on his motion for summary judgment until after the Court rules on the Discovery Motion.  He asserts that the Court's decision on the Discovery Motion "will affect the nature and scope of Defendant's Reply to Plaintiff's 'Memorandum in Opposition.'"  (Doc. 96, ¶ 5).

    The last time Stinson filed an emergency motion I explained that whenever a party denominates a motion as an emergency the Court stops whatever it is doing and gives the motion its full attention.  I also explained that ordinarily, a true emergency does not exist unless something that is irreplaceable is in jeopardy, physical violence is imminent, or a child is about to be taken beyond the jurisdiction of the Court (Doc. 88).  Despite this explanation, Stinson has styled as an emergency, a motion that clearly does not bring any emergency to the Court's attention.

    Stinson fails to explain how the 26 audit reports he has not seen impact the Government's opposition to his motion for summary judgment or his to-be-filed reply to that opposition.  He has also not explained why he delayed in filing this motion if in fact, he is confronted by a true emergency.  If Stinson's motion for summary judgment is denied (a legitimate possibility in light of the Court's earlier finding that the Government is likely to prevail on the merits), then he will still have the opportunity to present his case at trial and, if necessary, on appeal to the Eleventh Circuit.  At a more basic level, Stinson's

motion does not contain a memorandum of law in violation of M.D. Fla. Rule 3.01(a).   For these reasons, Stinson's emergency motion is **DENIED**, and he is admonished to think twice before designating future filings as emergencies.

    **DONE** and **ORDERED** in Orlando, Florida on April 11, 2016.

                                                      */s/ Thomas B. Smith*
                                                      THOMAS B. SMITH
                                                      United States Magistrate Judge

Copies furnished to Counsel of Record